IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Brian Keith Nesbitt, ) | C/A No. 0:14-2788-RMG-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Tim Riley, *Warden*; Bryan P. Stirling, *Director* ) | |
| *of Department of Corrections*; Amy Spencer; ) | |
| Dr. J.R. Bearden; DHO Richard Turner; Laura ) | |
| Caldwell; Lt. Lawson, *Safty*; Admin Captain ) | |
| Nance; Gary Lane; Investigator Lane; Karen ) | |
| McMorris; Cap. Jennette Glen; Lt. Jason ) | |
| Webber; Major James Parris; Captain Cathy ) | |
| Duncan; Dr. T. Byrne, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Brian Keith Nesbitt, a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983 alleging a violation of his constitutional rights by the defendants, who are employees of the South Carolina Department of Corrections ("SCDC"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the parties' cross motions for summary judgment. (ECF Nos. 62 & 105.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Nesbitt was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 106.) Both parties filed responses in opposition to the motions for summary judgment (ECF Nos. 65 & 123). Also before the court are Nesbitt's motions for: (1) declaratory judgment (ECF No. 62); (2) preliminary injunction (ECF Nos. 62 & 113); and (3) temporary restraining order (ECF Nos. 84 & 113). Having carefully considered the parties'

submissions and the applicable law, the court concludes that the defendants' motion should be granted and Nesbitt's motions should be denied.[1]

## BACKGROUND

Nesbitt alleges that he was injured when a prison transportation bus collided with another vehicle on July 25, 2013. (Third Am. Compl., ECF No. 75-1 at 17.)[2] Nesbitt claims that Defendant Investigator D. Lane and Defendant Warden Tim Riley came to the scene of the accident and instructed staff to escort the inmates into a prison van. (Id. at 18.) Nesbitt further claims that he sought medical attention for hip, back, and knee pain after the accident from Defendant Dr. J.R. Bearden and Defendant Amy Spencer, a nurse. (Id.) Nesbitt alleges that the defendants have been deliberately indifferent to Nesbitt's medical needs and he is unable to continue his "previous active lifestyle" due to injuries suffered during the accident. (Id. at 19, 21.)

Nesbitt also claims that the defendants have threatened him with disciplinary charges, placed him in solitary confinement, and otherwise harassed Nesbitt for seeking redress by filing this action. (Id. at 10, 24.) Nesbitt discusses the confiscation of hygiene items and prescribed knee braces/therapeutic rubber bands, letters, legal materials/documents, and photographs by the defendants. He alleges that his confiscated legal documents are needed to prosecute this case, and asserts that the confiscation of such property constitutes retaliation. (Id. at 3, 7-11.) Nesbitt also

---

[1] The court notes that Defendant Admin Captain Nance was not served with the Summons and Second Amended Complaint in this action. (Unexecuted Summons, ECF No. 61.) Accordingly, the court recommends that Defendant Nance be dismissed from this action without prejudice. See Fed. R. Civ. P. 4(m).

[2] Nesbitt's Third Amended Complaint (ECF No. 75) is comprised of his: (1) Complaint (ECF No. 75-1 at 16-26); (2) Amended Complaint (ECF No. 75-1 at 7-13); (3) Second Amended Complaint (ECF No. 75-1 at 1-6); and (4) Supplemental Complaint (ECF No. 76 at 1-8).



alleges the continued denial of medical treatment by Defendant Dr. T. Byrne.[3]  (Id. at 2, 4-6, 9-10; see also Supp. Compl., ECF No. 76 at 3-5.)  Nesbitt seeks monetary damages and injunctive relief in this case.  (ECF No. 75-1 at 26; see also Suppl. Compl., ECF No. 76 at 7.)

## DISCUSSION

A.     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

---

[3] The record reflects Nesbitt's transfer from Tyger River Correctional Institution ("Tyger River") to Allendale Correctional Institution ("Allendale") in August 2014. (Bearden Aff., ECF No. 105-2 at 13.)  While most of the defendants are alleged to be SCDC employees at Tyger River, Defendant Byrne is named as SCDC's treating physician at Allendale. (Third Am. Compl., ECF No. 75-1 at 7, 9-10.)



The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Nesbitt's Claims**

   **1.     Official Capacity Claims**

To the extent that Nesbitt is suing the defendants in their official capacities for monetary relief, they are entitled to summary judgment. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").



As arms of the state, these defendants, who are all SCDC employees, are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that capacity. See Will, 491 U.S. at 70-71. Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e). Accordingly, to the extent these defendants are sued in their official capacities for damages, they are immune from suit. Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

### 2. Individual Capacity Claims

#### a. Deliberate Indifference to Medical Needs and Safety

Deliberate indifference by prison personnel to a prisoner's medical needs is actionable under the Eighth Amendment to the United States Constitution. See Estelle v. Gamble, 429 U.S. 97, 104-105 (1976). To establish such a claim under the Eighth Amendment, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. However, because even a subjective



standard may be proven through circumstantial evidence, " 'a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious.' " Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (quoting Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995)). Therefore, " 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious.' " Id. (quoting Farmer, 511 U.S. at 842).

Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part on other grounds by Farmer, 511 U.S. at 837. Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks & citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Courts have recognized that "[l]ay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for." O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005); see also Nelson, 603 F.3d at 449 (noting that a prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating



that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. LeFevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

Moreover, to establish a claim for denial of medical care against non-medical personnel, a prisoner must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier, 896 F.2d at 854. Because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the prisoner. See id.

The Eighth Amendment also prohibits punishments which "involve the unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 103 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). Thus, under the Eighth Amendment, prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care, and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir.1978), overruled on other grounds by Bell v. Wolfish, 441 U.S. 520 (1979); see also Farmer, 511 U.S. at 832. "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.' " Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Strickler v. Waters, 989 F.2d 1375, 1379



(4th Cir. 1993)). Further, deliberate indifference is a very high standard, which requires more than a showing of mere negligence, see Estelle, 429 U.S. 97 at 105-06, and "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

The defendants' motion for summary judgment argues that Nesbitt cannot show that they were deliberately indifferent to his medical needs and safety. (Defs.' Mem. Supp. Mot. Summ. J., ECF No. 105-1 at 11-17.) In support of their motion, the defendants provide affidavit testimony from Defendants Richard C. Bearden, Jr., M.D., Amy Spencer, R.N., and Thomas E. Byrne, M.D., who testify that Nesbitt was timely evaluated and properly treated by a nurse or doctor each time he presented medical complaints at Tyger River and Allendale. (Bearden Aff., ECF No. 105-2 at 13; Spencer Aff., ECF No. 105-6 at 4; Byrne Aff., ECF No. 105-7 at 7.) Defendants Bearden, Spencer, and Byrne further testify that Nesbitt was referred to specialists, that recommendations of such specialists were implemented by these defendants, and that Nesbitt's medical care, or access thereto, was never denied or delayed. (Id.)

In addition, the defendants provide Nesbitt's SCDC medical summary between July 18, 2013 and April 9, 2015. (Med. Summ., ECF Nos. 105-3. 105-4, 105-5, 105-8.) This summary reflects that Nesbitt has a history of chronic degenerative arthritis and was seen for knee swelling and back pain at a sick call on July 18, 2013. (Id., ECF No. 105-5 at 16.) Nesbitt was also seen by Defendant Spencer on July 25, 2013 for reports of back and knee pain after being involved in a motor vehicle collision. (Id. at 15-16.) No marks, redness, bruising, or swelling was noted and Nesbitt's gait was determined to be steady. (Id. at 16.) Spencer advised Nesbitt to apply hot or warm compresses to his back and take Tylenol. (Id.) As Defendants Bearden, Spender, and Byrne testify, the medical summary reflects that Nesbitt was timely provided treatment and necessary referrals to outside



medical professionals for a variety of medical complaints between July 2013 and April 2015. (See Bearden Aff., ECF No. 105-2 at 2-13; Spencer Aff., ECF No. 105-6 at 2-5; Byrne Aff., ECF No. 105-7 at 2-7; see also Med. Summ., ECF Nos. 105-3, 105-4, 105-5, 105-8.) The medical summary also confirms the testimony of Defendants Bearden and Byrne regarding Nesbitt's refusal to comply with treatment and/or medications on several occasions. (Med. Summ., ECF No. 105-3 at 3-4; ECF No. 105-4 at 2, 5, 16-17; ECF No. 105-5 at 3-5, 7, 10; 105-8 at 6, 8-11, 13, 15-16; see also Bearden Aff., ECF No. 105-2 at 5-7, 11-12; Byrne Aff., ECF No. 105-7 at 4-7.)

The defendants further provide an incident report dated July 25, 2013, indicating that Defendant Webber responded to the scene of the automobile accident and transported prisoners involved in the accident, including Nesbitt, to Tyger River to be seen by Defendant Spencer. (Incident Report, ECF No. 105-10.) The accident was reported to the South Carolina Department of Public Safety. (Notice of Requirement Form, ECF No. 105-11 at 2.)

In his response in opposition to the defendants' motion for summary judgment, Nesbitt continues to assert that the defendants failed to take the proper remedial action after the automobile accident and that recommendations of outside medical professionals were not meaningfully implemented or regularly enforced by the defendants.[4] (Pl.'s Resp. Opp'n, ECF No. 123 at 7, 9.) Nesbitt also asserts that the defendants' "arguments are not supported by evidence." (Id. at 2.) However, the record in this case shows that Nesbitt was seen by a nurse after the accident on July

---

[4] To the extent Nesbitt may be attempting to allege additional claims in his response in opposition which were not presented in the Third Amended Complaint, he cannot do so. White v. Roche Biomedical Laboratories, Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992) (holding that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment"); see also Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment).



25, 2013 and frequently seen and treated by medical staff, to include Defendants Bearden, Spencer, and Byrne, for medical complaints between that date and April 2015. Further, Nesbitt has made no showing that the non-medical personnel defendants named in this action engaged in the type of conduct required by controlling law to establish an Eighth Amendment medical claim of deliberate indifference. At most, Nesbitt's claims allege negligence or medical malpractice, which is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Accordingly, the court concludes that no reasonable jury could find that the defendants were deliberately indifferent to Nesbitt's medical needs and safety, and the defendants' motion for summary judgment should be granted as to such claims.

### b. Deprivation of Legal Materials and Property

Inmates "have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 821 (1977). However, to succeed on a denial of court access claim brought pursuant to the First Amendment, inmates are required to demonstrate an impediment to the pursuit of a nonfrivolous legal claim. See Lewis v. Casey, 518 U.S. 343, 349 (1996) ("It is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts."). An inmate must also allege specific injury resulting from the alleged denial of court access. See Lewis, 518 U.S. at 349; Strickler, 989 F.2d at 1384 (holding that a prisoner must "show specific harm or prejudice from the allegedly denied access").



With regard to an inmate's property, the Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. However, an intentional deprivation of property by a governmental employee, if unauthorized, does not violate the Due Process Clause if a meaningful post-deprivation remedy for such loss is available. Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also Mora v. City of Gaithersburg, 519 F.3d 216, 230-31 (4th Cir. 2008). In South Carolina, prisoners may bring an action for recovery of personal property against officials who deprive them of property without state authorization. See McIntyre v. Portee, 784 F.2d 566, 567 (4th Cir. 1986) (citing S.C. Code Ann. §§ 15-69-10 et seq.). Such an action provides "a post-deprivation remedy sufficient to satisfy due process requirements." Id. (citing Parratt v. Taylor, 451 U.S. 527 (1981)).

In support of their contention that they did not unlawfully deprive Nesbitt of his right to court access or deprive him of any legal or personal property, the defendants provide the affidavit of Defendant Sergeant Karen McMorris, who testifies that she and Defendant Webber conducted a property inventory of Nesbitt's cell on July 15, 2014 to determine whether he had excess property. (McMorris Aff., ECF No. 105-12 at 3.) McMorris indicates that she completed and signed an "SCDC Inmate Property Inventory" form listing the contraband confiscated from Nesbitt's cell on that date to include dominos, canteen/hygiene items, suede shoes, torn shorts, four mirrors, and a clock. (Id.; see also Inmate Property Inventory, ECF No. 105-13 at 2-3; Unauthorized Items Form, ECF No. 105-14 at 2.) McMorris testifies that canteen items were removed because Nesbitt did not have canteen privileges and medications were confiscated because Nesbitt had removed all of the labels in violation of prison policy. (McMorris Aff., ECF No. 105-12 at 3-4.) The defendants provide an incident report completed by Defendant Webber on July 28, 2014 listing the confiscated



medications. (Incident Report, ECF No. 105-15 at 2.) McMorris further testifies that Nesbitt's knee braces and therapeutic rubber bands were never confiscated and his legal materials and photographs were inventoried, but not removed from his cell during the July 15, 2014 search. (McMorris Aff., ECF No. 105-12 at 4.)

Nesbitt's response in opposition to the defendants' motion for summary judgment reiterates his allegation that the defendants confiscated and refused to return Nesbitt's legal materials. (Pl.'s Resp. Opp'n, ECF No. 123 at 15-16.) However, Nesbitt fails to forecast evidence to show that the defendants' alleged confiscation of legal documents and materials impeded Nesbitt's ability to litigate his claims in this case or any other court action and he does not identify with any specificity an actual injury resulting from such confiscation. See Lewis, 518 U.S. at 349. Accordingly, the court concludes that no reasonable jury could find that the defendants violated Nesbitt's First Amendment rights in this case and their motion for summary judgment should be granted as to that claim.

Nesbitt's response in opposition also asserts that his items, to include family pictures in an album, were "confiscated [] without listing them outside of" his presence. (Pl.'s Resp. Opp'n, ECF No. 123 at 15.) Nesbitt claims that the defendants' illegal confiscation of his property was "performed contrary to their duties" and he appears to concede that South Carolina law provides a post-deprivation "remedy sufficient to satisfy due process." (Id. at 16, citing S.C. Code Ann. §§ 15-69-10 et seq.) In this case, it is undisputed that the legal documents and photographs referenced by Nesbitt were not listed as contraband on the forms prepared by the defendants during the confiscation of excess property on July 15, 2014. (Inmate Property Inventory, ECF No. 105-13 at 2-3; Unauthorized Items Form, ECF No. 105-14 at 2.) Thus, the taking of such property would constitute



an intentional and unauthorized deprivation, which does not violate the Due Process Clause because a meaningful post-deprivation remedy for such loss exists in South Carolina. Hudson, 468 U.S. at 533; McIntyre v. Portee, 784 F.2d at 567. Accordingly, the court concludes that no reasonable jury could find that the defendants deprived Nesbitt of property in violation of the Fourteenth Amendment.[5] See Hudson, 468 U.S. at 533 ("When deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur.").

### c. Retaliation and/or Harassment

To establish a claim of retaliation under § 1983, a plaintiff must show "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). The United States Court of Appeals for the Fourth Circuit has further noted that inmate retaliation claims are regarded with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Id. at 74.

The defendants argue that Nesbitt's claims of retaliation and/or harassment by the defendants for exercising his First Amendment rights are not supported by any evidence. (Defs.' Mem. Supp. Mot. Summ. J., ECF No. 105-1 at 17-19.) In support of their motion, the defendants provide affidavit testimony from McMorris, who indicates that Nesbitt was never placed in solitary

---

[5] To the extent Nesbitt's Third Amended Complaint asserts a denial of equal protection under the Fourteenth Amendment, the court notes that such a claim fails because Nesbitt forecasts no evidence to show that the defendants treated him differently from any similarly situated prisoner. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.").



confinement or lock-up at Tyger River, and was instead placed on thirty days of cell restriction after a disciplinary conviction in 2013 for possession of contraband involving loose tobacco and rolling papers. (McMorris Aff., ECF No. 105-12 at 4; see also Disciplinary Records, ECF No. 105-16 at 2-3.) The defendants also correctly assert that, to the extent Nesbitt alleges verbal abuse or harassment, such claims standing alone do not state a constitutional deprivation under § 1983. See Henslee v. Lewis, 153 F. App'x 178, 180 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983.").

Nesbitt's response in opposition to the defendants' motion continues to assert unconstitutional punishment for having filed the instant lawsuit. (Pl.'s Resp. Opp'n, ECF No. 123 at 3.) However, Nesbitt fails to forecast evidence from which a reasonably jury could find that the defendants violated any constitutional right or retaliated against him for exercising a constitutional right. Accordingly, the court concludes that the defendants' motion for summary judgment should be granted as to this claim.

**C.    Other Claims**

To the extent that Nesbitt's Third Amended Complaint may be construed to allege any other federal causes of action, the court finds that he has failed to plead sufficient facts to state a plausible claim. See Ashcroft v. Iqbal, 556 U.S. 662 (2009). Moreover, the court should not exercise

supplemental jurisdiction over any state law claims raised in this case.[6]  See 28 U.S.C. § 1367(c)(3); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Tigrett v. Rector and Visitors of the Univ. of Va., 290 F.3d 620, 626 (4th Cir. 2002) (affirming district court's dismissal of state law claims when no federal claims remained in the case).

## RECOMMENDATION

Accordingly, the court recommends that the defendants' motion for summary judgment (ECF No. 105) be granted and Nesbitt's pending motions (ECF Nos. 62, 84, 113) be denied.

*signature*
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 23, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[6] To the extent Nesbitt is seeking to raise state law claims of negligence or medical malpractice, South Carolina law requires a plaintiff to file an affidavit of an expert witness with his complaint when asserting a claim of professional negligence against a professional licensed or registered with the State of South Carolina.  See S.C. Code Ann. § 15-36-100(B), (G).  In this case, Nesbitt failed to file an expert affidavit with his Complaint.  Therefore, he cannot proceed with any state law claim of negligence or medical malpractice.  See Green v. Orangeburg Calhoun Det. Ctr., C/A No. 0:13-623-MGL, 2014 WL 4063328, at *5 (D.S.C. Aug. 12, 2014) (adopting and incorporating Report and Recommendation).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).